**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL S. GINGLES,
Plaintiff-Appellant,

v.

BETHLEHEM STEEL CORPORATION,
Bethship Division Shipyard,
Defendant-Appellee,

and

THE INDUSTRIAL UNION OF
MARINE AND SHIPBUILDING
WORKERS OF AMERICA, International
Association of Machinists and
Aerospace Workers No. 33,
Defendant.

No. 97-2168

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-96-2561-MJG)

Submitted: February 27, 1998

Decided: April 22, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Alisia Ferguson, Baltimore, Maryland, for Appellant. G. Stewart Webb, Jr., Mitchell Y. Mirviss, John T. Prisbe, VENABLE, BAET-JER AND HOWARD, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Michael Gingles filed suit against Bethlehem Steel Corporation (Bethlehem) alleging racial discrimination in violation of Title VII.[1] Relying on our decision in Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3351 (U.S., Nov. 12, 1996) (No. 96-337), the district court concluded that a collective bargaining agreement mandated arbitration of Gingles's claims; therefore, Gingles was precluded from filing suit in the district court. After a de novo review with all justifiable inferences drawn in Gingles's favor,[2] we find no reversible error and affirm the summary judgment order of the district court.

Starting in 1975, Gingles worked for Bethlehem in various capacities at Bethlehem's Sparrow Point Shipyard. In 1987, Gingles joined Department 89 which was responsible for the operation and maintenance of the shipyard's drydock. During his employment, Gingles was a member of the Industrial Union of Marine and Shipbuilding Workers of America/International Association of Machinists and Aerospace Workers, AFL-CIO (the Union), which had a collective bargaining agreement with Bethlehem. Article XIX of the collective bargaining agreement provided a multi-step dispute resolution proce-

---

[1] See 42 U.S.C. § 2000e-1 to -17 (1994).
[2] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

2

dure in which "any matter which, in the opinion of the Union or of any Employee, requires adjustment shall constitute a complaint or a grievance under this Agreement and shall be handled and disposed of solely in accordance with the procedures set forth below." Moreover, Article XIX provided that, following exhaustion of the grievance procedure steps, the parties could place a grievance into arbitration and the decision of arbitration was "final and binding."

In August 1996, Gingles filed suit alleging that Bethlehem discriminated against him because of race in violation of Title VII, when it placed him in layoff status in June 1995 and when it failed to recall him after another employee retired in January 1996. Bethlehem moved for summary judgment. The company asserted that Gingles's claims were subject to mandatory arbitration under the collective bargaining agreement, and that Gingles failed to allege any material facts to support his claims of racial discrimination. Because Gingles failed to pursue his claims under the grievance/arbitration procedure, Bethlehem maintained that Gingles was precluded from filing suit in federal court.

The district court granted summary judgment in favor of Bethlehem based on Gingles's failure to pursue his claims under the grievance/arbitration procedure outlined in the collective bargaining agreement. The court held that the agreement subjected Gingles's claims to mandatory arbitration. Thus, the court held that Austin precluded Gingles from bringing the lawsuit. This appeal followed.

Gingles argues that the district court erred by relying on our decision in Austin because Austin was wrongly decided. He contends that Title VII and the Supreme Court's decision in Alexander v. Gardner-Denver Co., 415 U.S. 36, 53-54 (1974), require that statutory claims not be submitted to arbitration for resolution. On the other hand, Bethlehem argues that the enforcement of arbitration agreements is controlled by the Supreme Court's decision in Gilmer v. Interstate/ Johnson Lane Corp., 500 U.S. 20 (1991), where the court held that statutory claims may be the subject of an enforceable arbitration agreement.[3] Bethlehem maintains that our decision in Austin is a

_____

**3 Gilmer**, 500 U.S. at 26.

3

proper extension of <u>Gilmer</u> and controls the disposition of this case. We agree.

A union has the right and duty to bargain for the terms and conditions of employment.**4** Through the collective bargaining process, unions may waive the right to strike and other rights protected under the National Labor Relations Act.**5** The Supreme Court finds such waivers "valid because they rest on the premise of fair representation."**6** There is no reason to distinguish between a union bargaining away the right to strike and a union bargaining for the right to arbitrate. The right to arbitrate is a term or condition of employment, and as such, the union may bargain for this right. Further, agreements to arbitrate statutory claims should be enforced unless the plaintiff demonstrates that Congress intended to preclude the waiver of a judicial forum for claims under a particular statute, either expressly or because of inherent incompatibility between the statute's goals and the arbitral forum.**7**

Turning to the language of the collective bargaining agreement governing Gingles's employment, we note that it prohibits discrimination "on account of race, color, creed, religion, sex (sexual harassment), age, handicap, national origin, or veteran status." In <u>Austin</u>, we similarly concluded that the plaintiff's claim under Title VII was covered by the mandatory grievance procedures of the contract where the collective bargaining agreement specifically listed racial discrimination as a claim that was subject to arbitration. **8** This voluntary agreement is consistent with the text of Title VII, the legislative intent

---

**4 <u>See</u>** 29 U.S.C. § 158(d) (1994).
**5 <u>See</u>** 29 U.S.C. §§ 151-187 (1994); <u>Metropolitan Edison Co. v. NLRB</u>, 460 U.S. 693, 705 (1983).
**6 Metropolitan Edison**, 460 U.S. at 705 (citations omitted).
**7 <u>See Gilmer</u>**, 500 U.S. at 35 (holding that nothing in the ADEA indicates a congressional intent to preclude the arbitration of ADEA claims); <u>see also Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 238, 242 (1987) (holding that agreement to arbitrate statutory claims under Securities Exchange Act and RICO should be enforced since nothing in those statutes precludes the arbitration of claims); <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 640 (1985) (holding that Sherman Act claims are arbitrable).
**8 <u>See Austin</u>**, 78 F.3d at 879-80.

4

behind those statutes, and the purposes of those statutes; thus, the district court did not err in finding the arbitration provision in the collective bargaining agreement enforceable.

For the foregoing reasons, we affirm the summary judgment order with respect to Gingles's Title VII claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5